John THOMAS, Petitioner–Appellant,

v.

MUNICIPAL COURT OF the ANTE-LOPE VALLEY JUDICIAL DISTRICT OF CALIFORNIA, Respondent–Appellee.

No. 88–5700.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 1, 1988.

Decided June 23, 1989.

Joseph W. Fairfield, Los Angeles, Cal., for petitioner-appellant.

Donald J. Kaplan and John W. Messer, Deputy Dist. Attys. of Los Angeles County, Los Angeles, Cal., for respondent-appellee.

Before HALL and LEAVY, Circuit Judges, and STRAND *, District Judge.

* Honorable Roger G. Strand, United States District Judge for the District of Arizona, sitting by designation.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Dr. John Thomas, on appeal from the district court's denial of his petition for a writ of habeas corpus, claims that the double jeopardy clause of the fifth amendment bars his retrial in state court for the assault and battery of his estranged wife. Dr. Thomas contends that (1) the district court improperly determined his attorney had a conflict of interest, and (2) his retrial is barred because the trial judge declared a mistrial sua sponte, after jeopardy had attached, without manifest necessity.

I

In 1979, Wanda Thomas married Dr. Thomas although, at the time, she was still married to a Mr. Popa. Mrs. Thomas' marriage to Popa was ultimately dissolved in 1981. Joseph W. Fairfield represented Mrs. Thomas in her dissolution from Popa. In March 1985, Mrs. Thomas began dissolution proceedings against Dr. Thomas. Fairfield represented Dr. Thomas in those proceedings.

In August of 1985, the district attorney filed a criminal complaint charging Dr. Thomas with assault and battery of his wife, in violation of California Penal Code §§ 245(a)(1) and 242 (West's 1988). Trial began in Antelope Valley Municipal Court on December 18, 1985; Fairfield also represented Dr. Thomas in those proceedings. A jury was empaneled and sworn. In his opening statement, Fairfield told the jury that Mrs. Thomas fabricated the assault charges in retaliation for her husband's alleging, in the course of their pending dissolution, that she was a bigamist who married him in bad faith and who was, therefore, not entitled to community assets of the marriage. The prosecutor interposed an objection. A conference in chambers followed in which Fairfield produced documents indicating that Mrs. Thomas' previous marriage was not dissolved when she married Dr. Thomas. Fairfield also revealed that he had represented Mrs. Thomas in the 1981 Popa dissolution proceedings.

The prosecutor moved that Fairfield be disqualified for a conflict of interest. Fairfield denied the existence of a conflict and said he would confine his evidence and cross-examination concerning the retaliation defense to the dates of Mrs. Thomas' divorces and marriages. Fairfield also said he would abandon the bigamy motive. However, the trial court agreed with the prosecution that Fairfield had a disabling conflict of interest. Because Dr. Thomas would not waive any conflict of interest or agree to a mistrial, the trial court declared a mistrial sua sponte and set the matter for retrial on January 28, 1986.

Dr. Thomas began efforts to prevent a retrial. Still represented by Fairfield, Dr. Thomas moved in municipal court for an order of acquittal on the grounds that retrial was barred by double jeopardy. After his motion was denied, Dr. Thomas sought a writ of prohibition in Superior Court of Los Angeles County which was also denied on February 6, 1986. The California Court of Appeal denied Thomas' petition for review of the Superior Court's decision on February 25, 1986.

On March 3, 1986, there were further proceedings in municipal court. Dr. Thomas told the trial court he wished to waive any conflict of interest. However, when the prosecutor attempted to obtain a waiver, it became apparent that Dr. Thomas was not making a knowing, informed, and intelligent waiver since he had not discussed the potential penalties he would face on the charges. All agreed that Dr. Thomas should talk with another lawyer before deciding whether to waive the conflict. Although Fairfield appeared for Dr. Thomas on March 3rd, the court made it clear that a conflict of interest existed which required that Dr. Thomas consult another attorney.

Dr. Thomas petitioned for a writ of prohibition in the California Supreme Court. The Supreme Court transferred the matter to the Court of Appeal, which denied the petition on April 3, 1986. Dr. Thomas then petitioned the California Supreme Court for a review of that denial. The Supreme Court granted review and transferred the

matter back to the Court of Appeal with instructions to issue an alternative writ. On August 29, 1986, the Court of Appeal denied the petition and discharged the alternative writ. On September 23, 1986, the Court of Appeal denied a rehearing and on December 11, 1986, the California Supreme Court denied Dr. Thomas' petition for review.

Having thus exhausted his state court remedies, Dr. Thomas filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Central District of California on December 26, 1986. On September 23, 1987, the magistrate, to whom the district court referred Dr. Thomas' petition, filed proposed findings and Dr. Thomas filed objections. On October 7, 1987, the district court adopted the magistrate's findings, and entered a judgment denying the petition.

Dr. Thomas filed a timely notice of appeal and applied to the district court for a certificate of probable cause. The district court denied the application, certified for purposes of 28 U.S.C. § 1915(a) that the appeal was not taken in good faith, and indicated that the application was frivolous and without merit. On March 2, 1988, this court granted Dr. Thomas' application for a certificate of probable cause.

## II

A district court's decision to grant or deny a petition for habeas corpus is reviewed de novo. *Chizen v. Hunter,* 809 F.2d 560, 561 (9th Cir.1986).[1] In our review of the state court proceedings, we must give deference to state court findings of fact but not to state court determinations of mixed questions of law and fact or purely legal questions. *Id.*

■ In a jury trial, "jeopardy attaches when the jury is empaneled and sworn." *Id.* at 769 (citing *Crist v. Bretz,* 437 U.S. 28, 29, 98 S.Ct. 2156, 2157, 57 L.Ed.2d 24 (1978)); *United States v. Jaramillo,* 745 F.2d 1245, 1247 (9th Cir.1984), *cert. denied,*

471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985). The double jeopardy clause of the fifth amendment protects a defendant's "valued right to have his trial completed by a particular tribunal." *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978); *Jaramillo,* 745 F.2d at 1247; *United States v. Mitchell,* 736 F.2d 1299, 1300 (9th Cir.1984). Balanced against the defendant's right, however, is the right of society to be protected against those guilty of crimes by enabling society to retry the accused under certain circumstances. *Mitchell,* 736 F.2d at 1300. In addressing these competing concerns, the rules that have emerged focus upon whether the defendant has consented to the mistrial. Where a mistrial has been declared over the defendant's objection after jeopardy has attached, however, reprosecution is not barred if the trial was terminated because of "manifest necessity." *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830; *United States v. Jarvis,* 792 F.2d 767, 769 (9th Cir.1986); *Jaramillo,* 745 F.2d at 1247; *United States v. Williams,* 717 F.2d 473, 475 (9th Cir.1983).

The words " 'manifest necessity' ... do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Williams,* 717 F.2d at 475 (quoting *Arizona v. Washington,* 434 U.S. at 505–06, 98 S.Ct. at 830–31). The Supreme Court has recognized that there are "degrees of necessity" and the degree of deference to be given the trial judge's decision to declare a mistrial because of "manifest necessity" varies according to the circumstances of each case. *Arizona v. Washington,* 434 U.S. at 507–10, 98 S.Ct. at 830–33; *Jarvis,* 792 F.2d at 769; *Jaramillo,* 745 F.2d at 1248; *Williams,* 717 F.2d at 475.

Because there is no allegation in this case that the prosecution intentionally caused the mistrial, the trial court's decision to grant a mistrial should be accorded great deference and respect. *See Jarvis,*

---

1. Even though he is free after having been released on his own recognizance, Thomas may assert his double jeopardy claim in a petition for habeas corpus. *See Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).

792 F.2d at 769. In according such deference, however, this court must satisfy itself that the trial court exercised sound discretion in declaring a mistrial. *Arizona v. Washington*, 434 U.S. at 514, 98 S.Ct. at 834. If it can be shown that the trial judge acted irrationally or irresponsibly, his actions cannot be condoned. *Arizona v. Washington*, 434 U.S. at 514, 98 S.Ct. at 834.

In the present case, jeopardy had already attached when Fairfield's disabling conflict of interest was discovered. We must decide whether this conflict of interest, which Thomas refused to waive, constituted "manifest necessity" for the involuntary discharge of Dr. Thomas' original proceedings. If so, a retrial of Dr. Thomas will not violate the double jeopardy clause.[2]

### A

■ We must first decide whether the courts below erred in finding that a conflict of interest existed. The sixth amendment guarantees each criminal defendant the right to assistance of counsel "unhindered by a conflict of interests."[3] *United States v. Wheat*, 813 F.2d 1399, 1402 (9th Cir.), *aff'd on other grounds*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1987). Conflicts of interest can arise both in cases of simultaneous and successive representation. *Fitzpatrick v. McCormick*, 869 F.2d 1247, 1247, 1251 (9th Cir. March 7, 1989); *Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 260, 102 L.Ed.2d 249 (1988). The present case is clearly one of successive representation.

■ With successive representation cases, "conflicts of interests may arise if [the] cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties." *Mannhalt*, 847 F.2d at 580 (citing *Wheat*, 813 F.2d at 1402 n. 1). *See also United States v. Calabria*, 614 F.Supp. 187, 192 (E.D.Pa.1985) (conflict of interest concerns arise when an attorney must prepare a case against, cross-examine, or impeach a former client on subject matter so closely connected with that of the earlier representation that confidences might be involved).

### 1

A "substantial relationship" exists if the factual contexts of the two representations are similar or related. *Trone v. Smith*, 621 F.2d 994, 998–99 (9th Cir.1980). If there is reasonable probability that confidences were disclosed which could be used against the former client in the later adverse representation, moreover, a substantial relationship between the two cases will be presumed. *See Trone*, 621 F.2d at 999. In

---

**2.** We note that the California courts have held there is no double jeopardy bar to retrial where the relationship between the accused and his counsel has irretrievably broken down after the attachment of jeopardy, frustrating the realization of a fair trial. *See People v. McNally*, 107 Cal.App.3d 387, 390, 165 Cal.Rptr. 715 (1980) (public defender's conflict of interest, which was discovered three days after trial began, struck at the defendant's constitutionally guaranteed right to effective assistance of counsel and constituted "legal necessity" for mistrial); *People v. Manson*, 61 Cal.App.3d 102, 202, 132 Cal.Rptr. 265 (1976) (defendant was denied sixth amendment right to effective representation where trial court refused to declare a mistrial for "legal necessity" when defense attorney disappeared after taking of evidence) *cert. denied*, 430 U.S. 986, 97 S.Ct. 1686, 52 L.Ed.2d 382 (1977) (citing *Curry v. Superior Court*, 2 Cal.3d 707, 713, 87 Cal.Rptr. 361, 470 P.2d 345 (1970)). We see no meaningful distinction between the California law concept of "legal necessity" and that of "manifest necessity." We find these authorities persuasive.

**3.** Thomas argues that the trial court violated his sixth amendment right to counsel of his own choice by refusing to allow Fairfield to continue as his trial attorney. Under the sixth amendment, criminal defendants "who can afford to retain counsel have a qualified right to obtain counsel of their choice." *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir.1986). *See also Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 1696, 100 L.Ed.2d 140 (1988). "[T]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 108 S.Ct. at 1697. *United States v. Washington*, 797 F.2d at 1465; *United States v. Vargas–Martinez*, 569 F.2d 1102, 1104 (9th Cir.1978). In this case, Dr. Thomas' qualified right to counsel of his choice must give way to a conflict of interest finding.

the present case, Fairfield's representations of Mrs. and Dr. Thomas are substantially related within the meaning of *Trone*.

█ The factual link between the two representations is that Mrs. Thomas married Dr. Thomas before Fairfield completed the dissolution of her previous marriage. Dr. Thomas' principal defense to the pending state criminal charges is that Mrs. Thomas fabricated the assault and battery charges against him in retaliation for his allegation, in the course of their pending dissolution, that Mrs. Thomas was a bigamist who married him in bad faith and was not, therefore, entitled to the community assets of the marriage. An essential component of this defense would be Mrs. Thomas' motive for lying about the assault. The facts of the two representations are, therefore, inexorably linked because the bigamy allegation is a matter about which Fairfield might have to cross-examine Mrs. Thomas or introduce independent proof in order to establish Dr. Thomas' defense.

Fairfield himself implicitly acknowledged this factual connection between his representations of Mrs. and Dr. Thomas when he offered to limit his evidence and cross-examination on the retaliation defense to the overlap in dates between the two marriages, and to the fact that Dr. Thomas alleged bad faith bigamy in the Thomases' dissolution. Fairfield would not have offered to change the scope of his anticipated cross-examination of Mrs. Thomas, or entirely to withdraw the bigamy motive as a defense, if he did not think that a substantial relationship existed between the two representations.

4. California law and federal law are consistent on this point. An attorney has the duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Cal.Bus. & Prof. Code § 6068(e). *See Yorn v. Superior Court*, 90 Cal.App.3d 669, 675, 153 Cal.Rptr. 295 (1979); *Trone*, 621 F.2d at 998–99.

Under both California and federal law, moreover, the ethical prohibition against acceptance of adverse employment involving prior confidential information includes potential as well as actual use of previously-acquired privileged information. *Yorn*, 90 Cal.App.3d at 675, 153 Cal.Rptr. 295; *see also Trone*, 621 F.2d at 999. Fairfield may deny that he possessed confidential information from his representation of Mrs.

2

The interest to be preserved by preventing attorneys from accepting representation adverse to a former client is the protection and enhancement of the professional relationship in all of its dimensions. *Trone*, 621 F.2d at 998. Perhaps the most important aspect of the professional relationship served by this rule is the preservation of secrets and confidences communicated to the lawyer by the client.[4] *Id.; see also Fitzpatrick*, 869 F.2d at 1252. Confidentiality is not, however, the only aspect of the professional tie preserved. The lawyer and the client should also expect that the lawyer will use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation on the client's behalf.[5] *Trone*, 621 F.2d at 998; *see also Fitzpatrick*, at 1252 ("Among the dangers in a successive representation situation is that the attorney who has obtained privileged information from the former client may fail to conduct a rigorous cross-examination for fear of misusing that confidential information.")

Fairfield's representation of Dr. Thomas creates the possibility that heretofore privileged information will be disclosed. Fairfield acknowledged, for example, that he would attempt to show Mrs. Thomas lied about the alleged assault and, as previously discussed, would likely find it necessary to examine or cross-examine Mrs. Thomas regarding her alleged bigamy in order to establish this defense. Should Mrs. Thom-

Thomas. However, it matters not whether confidences were in fact imparted; the underlying concern is the possibility that Fairfield may have received confidential information from Mrs. Thomas in a substantially related matter. *See Trone*, 621 F.2d at 998–99; *see also Fitzpatrick*, 869 F.2d at 1252 (the mere possession of a former client's privileged communication poses the precise potential for conflict). Such a possibility clearly exists here.

5. For California law on this point, *see Leversen v. Superior Court*, 34 Cal.3d 530, 538, 194 Cal. Rptr. 448, 668 P.2d 755 (1983); *In Re Darr*, 143 Cal.App.3d 500, 513, 191 Cal.Rptr. 882 (1983); *Yorn*, 90 Cal.App.3d at 669, 153 Cal.Rptr. 295.

as claim her attorney-client privilege on the stand, this could block an avenue of pursuit by Fairfield of certain information to which he was privy as a result of his previous representation. The only way effectively to examine or cross-examine her would be to breach the confidence. Standing alone, this potential for disclosure of confidential communications might be a sufficient basis for a conflict-of-interest finding. *Trone*, 621 F.2d at 999; *see also Fitzpatrick*, 869 F.2d at 1252.

Fairfield also appears, however, to have divided loyalties which could adversely affect his ability diligently to defend Dr. Thomas. For example, Fairfield admitted that his primary objective in defending Dr. Thomas was, in the words of the trial judge, "to try and prove that a former client is a liar." Fairfield also suggested that he could confine his examination to the day of the attack in order to lessen the adverse effect of any potential conflict. Fairfield further admitted that he would have to curtail his planned cross-examination of Mrs. Thomas, and that he would be willing to abandon the bigamy motive.

These solutions to Fairfield's ethical dilemma would have jeopardized Dr. Thomas' right to vigorous, effective assistance of counsel in violation of Dr. Thomas' sixth amendment rights. Permitting Fairfield to remain as Dr. Thomas' attorney would have subverted the basic purposes of the professional responsibility standards and would have denied Dr. Thomas a fair trial.

We conclude that the trial court correctly determined that Fairfield was disabled from representing Dr. Thomas because of a clear and palpable conflict of interest.

### B

In light of the evident conflict of interest, the trial court did not err in its decision to declare a mistrial sua sponte for "manifest necessity," because Dr. Thomas would neither agree to a waiver of the conflict[6] nor would he consent to a mistrial. The trial judge exercised sound discretion and acted rationally and responsibly in handling the sensitive conflict of interest issue presented.[7] Had the trial court simply proceeded with the trial, reversible error would have been built in because the record would have demonstrated that Dr. Thomas did not have effective, conflict-free representation. We should be aware of the trial court's prospects of being "whip-sawed" by assertions of error no matter which way it rules. *See Wheat*, 108 S.Ct. at 1698.

The judgment of the district court must be AFFIRMED.

---

**6.** Dr. Thomas argues that *Mrs. Thomas* "waived" the conflict of interest by neither objecting to Fairfield's representation of him in the civil proceedings filed by her for damages from the assault nor interposing an objection to Fairfield's representation of him in the criminal proceedings. However, Mrs. Thomas' failure to object would not constitute a complete waiver of the conflict of interest; that waiver right also belonged to Dr. Thomas, as Fairfield's present client.

**7.** No evidentiary hearing was necessary on the issue of Fairfield's conflict of interest. *See United States v. Jarvis*, 792 F.2d 767, 768–69 (9th Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 116 (1986) (judge declared a mistrial in chambers after hearing arguments and deciding that defendants' rights to a fair trial had been compromised).