**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Estella JARAMILLO,
Defendant-Appellant.**

No. 84–1091.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 1984.

Decided Oct. 23, 1984.

Valerie Stewart, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Lloyd Charton, Tustin, Cal., Robert J. Hantman, Peckar & Abramson, New York City, for defendant-appellant.

Before MERRILL, ALARCON and NELSON, Circuit Judges.

ALARCON, Circuit Judge:

■ Estella Jaramillo appeals from the denial of her motion to bar her retrial.[1]

## I

## PERTINENT FACTS

Jaramillo was indicted by the Federal Grand Jury for the District of Nevada, sitting in Las Vegas, for (1) aiding and abetting the distribution of a controlled substance in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), and (2) conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and § 846.

Trial began on December 6, 1983, before District Court Judge Harry E. Claiborne. The jury was selected and sworn on the following day. Later the same day, the jury heard opening statements, and testimony of three of the government's witnesses. During the morning session on December 8, the government began the direct examination of its fourth witness. At the conclusion of the noon recess, Judge Claiborne invited Jaramillo's attorney and the government prosecutor into his chambers and informed counsel that he had just received word that he had been indicted by the Federal Grand Jury for the District of Nevada sitting in Reno, and that he "[didn't] have any alternative but to declare a mistrial in this case."[2] Jaramillo's attorney made no comment nor did he suggest that the trial judge consider recusing himself so that the trial could proceed before a different judge.

Thereafter, Judge Claiborne commenced the afternoon session by making the following statement to the jury:

Ladies and gentlemen of the jury, I regret to advise you that I have been advised that I have been indicted by the grand jury in Reno. By reason of that fact—it would be inappropriate for anybody to preside in a trial who is under indictment. For that reason I am declaring a mistrial in this case.

I thank you for the inconvenience of serving as a juror, and I regret the circumstances which cause this trial to be delayed. So, you are excused with my thanks.

After the jury left the courtroom, Judge Claiborne ordered that the matter be set for trial on February 13, 1984. The prosecutor then stated: "Thank you, your honor." Judge Claiborne replied, "I am sorry. I know you were ready to go, but I can't help it. Court will be in recess." Again, Jaramillo's counsel remained silent and

---

1. The denial of a motion to bar retrial on the basis of double jeopardy is a final decision over which this court has appellate jurisdiction under 28 U.S.C. § 1291. *Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2036, 52 L.Ed.2d 651 (1977); *United States v. Williams,* 717 F.2d 473, 474–75 (9th Cir.1983).

2. The proceedings in chambers were reported. The reporter's transcript reflects the following colloquy:

    I regret to advise you that I have just received word that the Reno Grand Jury has indicted me·on seven counts, so I didn't have any alternative but to declare a mistrial in this case. I am sorry. I wanted you to know in advance that that is what I intend to do.
       MS. STEWART: Yes, your honor.
       THE COURT: So, get the jury in.
    We also note that neither the Supreme Court nor this court has ruled that the Constitution requires the trial court to consider on the record the alternatives to mistrial nor to conduct a hearing before discharging the jury. In the same year that *Arizona v. Washington* was decided, the Supreme Court remanded a Second Circuit case which had held that consideration on the record was required. *See United States v. Grasso,* 552 F.2d 46 (2nd Cir.1977), *vacated and remanded,* 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978). On remand, the Second Circuit held that trial court findings on alternatives to dismissal were "desirable" but "not constitutionally mandated." *United States v. Grasso,* 600 F.2d 342, 343 (2nd Cir.1979), *quoting Arizona,* 434 U.S. at 516–17, 98 S.Ct. at 835–36. *See also United States v. Lynch,* 598 F.2d 132, 136 (D.C.Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1287, 59 L.Ed.2d 498 (1979) (court troubled by trial court's failure to give counsel opportunity to suggest alternatives to mistrial but found no abuse of discretion).

failed to propose an alternative to the declaration of a mistrial.

On the date Judge Claiborne declared a mistrial, he was the only active judge hearing cases in Las Vegas, Nevada. Senior Judge Roger D. Foley handled a limited load of civil cases.

On January 12, 1984, Jaramillo filed a motion to bar retrial on double jeopardy grounds because "[t]here was no manifest necessity for declaring a mistrial." In her points and authorities filed in support of this motion, Jaramillo asserted for the first time that "[n]o alternatives to the mistrial were discussed or explored." Jaramillo also argued that "[d]efense counsel was never consulted or given an opportunity to object or suggest alternatives." Oral argument on Jaramillo's motion was heard by Judge Foley on March 19, 1984. He denied the motion on March 20, 1984. On the same date, Jaramillo's motion for a stay pending appeal was granted by Judge Foley.

## II

### ISSUE

We must decide whether the unique circumstances which confronted Judge Claiborne as the result of being indicted while presiding over a criminal trial constituted a manifest necessity for the discharge of the jury and the declaration of a mistrial.

In seeking reversal, Jaramillo contends that the indictment of Judge Claiborne did not establish "the high degree of necessity which would warrant a declaration of mistrial." We disagree.

## III

### ANALYSIS

A. *Manifest Necessity*

■ The double jeopardy clause of the fifth amendment of the Constitution protects an accused's "valued right to have his trial completed by a particular tribunal." *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978),

*quoting Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). To prevent unfairness to the accused, the prosecutor is generally entitled to only one opportunity to require the accused to stand trial. *Arizona,* 434 U.S. at 504–05, 98 S.Ct. at 829–30. Jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 29, 98 S.Ct. 2156, 2157, 57 L.Ed.2d 24 (1978); *United States v. Williams,* 717 F.2d 473, 475 (9th Cir.1983). It is clear from this record that jeopardy had already attached before a mistrial was declared.

■ Even after jeopardy attaches, however, reprosecution is not barred if the trial was terminated because of "manifest necessity." *Arizona,* 434 U.S. at 505, 98 S.Ct. at 830; *Williams,* 717 F.2d at 475. The manifest necessity standard was first announced by the Court in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824):

We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes ....

Judge Claiborne made no finding of manifest necessity before declaring a mistrial. He stated only that he believed it would be "inappropriate" for him to proceed. He also did not discuss the possible double jeopardy consequences of his action. In *Arizona v. Washington,* 434 U.S. 497, 516–17, 98 S.Ct. 824, 835–36, 54 L.Ed.2d 717 (1978), the Court held that the trial court's failure to make an explicit finding of manifest necessity was not constitutionally defective. A reviewing court may determine

from the record whether the mistrial was required by manifest necessity.

■ The degree of deference to be accorded the trial judge's determination of manifest necessity varies with the circumstances of each case. *Arizona*, 434 U.S. at 507–10, 98 S.Ct. at 831–32; *Williams*, 717 F.2d at 475.

In *Arizona v. Washington*, 434 U.S. at 508–10, 98 S.Ct. at 831–32, the Court described the standard of review as a continuum with strictest scrutiny applied to the court's determination where the accused claims that the mistrial was caused intentionally by the prosecution and, at the other end, great deference accorded the trial judge's conclusion that a mistrial is required because of a deadlocked jury. In *Arizona*, the trial court declared a mistrial after defense counsel made an improper opening statement. The Court granted this determination "great deference" so as not to impede the trial judge in the performance of his duty to protect the integrity of the trial. *Id.* at 513–14, 98 S.Ct. at 834. Even where a decision is given great deference, however, this court may overturn it if it is irrational or irresponsible. *Id.* at 514, 98 S.Ct. at 834.

The record here does not reveal that intentional prosecutorial misconduct caused the mistrial. The United States Attorney's Office for the District of Nevada which prosecuted Jaramillo was recused from the investigation of Judge Claiborne in June, 1981. The Public Integrity Section of the Department of Justice presented the evidence against Judge Claiborne to the grand jury. Thus, we are not required to review this record under a strict scrutiny standard.

■ A trial judge's determination that it is inappropriate for him to continue to preside over a criminal case after he has been indicted is arguably analogous to the judge's determination of possible juror bias at issue in *Arizona*. In both situations, an overly rigid standard of review might cause a judge to proceed with the trial of a case where the integrity of the entire proceeding was seriously clouded in order to avoid declaring a mistrial which might result in a double jeopardy claim. Whether deference or great deference is applied to Judge Claiborne's declaration of a mistrial, we reach the same result in this matter. The extraordinary circumstances of this case required that a mistrial be declared.

Jaramillo argues that the mistrial was not a necessity because the indictment of a presiding judge does not disqualify him or her from completing the case.

In denying Jaramillo's motion to bar retrial, Judge Foley apparently concluded that Judge Claiborne was required to disqualify himself under 28 U.S.C. § 455(a). That statute provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (1982). The purpose of section 455(a) is to protect the courts against even the appearance of partiality. *United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir.1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982) *citing Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

■ Recusal is required under section 455(a) if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir.1984); *Trotter v. International Longshoremen's & Warehousemen's Union*, 704 F.2d 1141, 1144 (9th Cir.1983). Section 455(a) puts the judge under a self-enforcing obligation to recuse himself where legal grounds exist for disqualification. *Trotter*, 704 F.2d at 1144.

■ Judge Claiborne properly concluded that a reasonable person with knowledge of all the facts pertaining to the nature of the indictment would question the ability of a judge facing prosecution to remain impartial as the presiding jurist in a criminal proceeding.

■ Jaramillo contends, however, that her interest in having her trial completed outweighed the judge's duty to disqualify himself under section 455(a). Jaramillo argues that under the "Rule of Necessity," a judge must decide a case in which he or she has a personal interest if the parties otherwise would be denied a forum, citing *United States v. Will,* 449 U.S. 200, 213, 101 S.Ct. 471, 479, 66 L.Ed.2d 392 (1980). The Rule of Necessity was applied in *Will* because a contrary holding would have denied the parties in that matter any forum because all federal judges were similarly interested in the outcome of the case. *Id.* Jaramillo, however, was not denied the right to any forum by Judge Claiborne's disqualification. Moreover, since *Will,* Congress amended section 455 to do away with the "duty to sit" doctrine which had previously required a judge to hear a case absent a clear demonstration of bias or prejudice. *United States v. Coven,* 662 F.2d 162, 168 (2nd Cir.1981), *cert. denied,* 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982); *Blizard v. Frechette,* 601 F.2d 1217, 1220 (1st Cir.1979).

### B. *Rule 25(a)*

Jaramillo asserts that prior to exercising his discretion to declare a mistrial, Judge Claiborne was obligated to consider less drastic alternatives. Specifically, she argues that Judge Claiborne was required by Rule 25(a) of the Federal Rules of Criminal Procedure to consider the alternative of continuing further proceedings so that another judge could determine if the trial could be completed.

Rule 25(a) of the Federal Rules of Criminal Procedure provides:

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.

■ As set forth above, Rule 25(a) provides that if by reason of a "disability" a judge is unable to proceed with a trial, another judge may proceed with the trial upon certifying that he has familiarized himself with the record of the trial. Rule 25(a) does not define the term "disability." We note, however, that the rule expressly applies to a disability to proceed with the trial brought about by death or sickness. Neither death nor a disabling sickness necessarily affects the integrity of all prior proceedings in the trial. Under such circumstances, if the record is free of any problems caused by the judge's disability which affects the integrity of the trial to date, another judge who has familiarized himself with the record may readily take over and finish the trial. Where, as here, the "disability" directly implicates the character and integrity of the judge especially in relation to criminal proceedings, the designation of another judge would not remove the appearance of partiality concerning all prior rulings and all actions of the indicted judicial officer, from the inception of the trial. To establish the appearance of justice under such extraordinary circumstances, a new judge would necessarily be compelled to begin the trial anew. It is our view that Rule 25(a) did not provide Judge Claiborne with a practical or feasible alternative to the declaration of a mistrial in light of the historically unique problems he faced as a judge indicted on criminal charges which called into question his moral fitness to sit as a judge. Judge Claiborne did not err in failing to invoke *sua sponte* the procedure set forth in Rule 25(a).

The order denying the motion to bar a retrial is AFFIRMED.