**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clifton CAMERON and Paul Tinson,**
**Defendants–Appellants.**

**No. 91–3447.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 1, 1991.

Decided Jan. 7, 1992.

Roger S. Bamberger (argued and briefed), Blas E. Serrano, Asst. U.S. Attys., Cleveland, Ohio, for U.S.

Alan C. Rossman (argued and briefed), Cleveland, Ohio, for Clifton Cameron.

Thomas G. Longo (argued and briefed), Cleveland, Ohio, for Paul C. Tinson.

Before MARTIN and MILBURN, Circuit Judges, and JOINER, Senior District Judge.*

JOINER, Senior District Judge.

Clifton Cameron and Paul Tinson appeal the district court's denial of a motion to dismiss indictments charging them with possession of cocaine base with intent to distribute, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Their initial trial ended when the trial court declared a mistrial over defendants' objections. Defendants allege that retrial would violate the Double Jeopardy Clause

* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

of the Fifth Amendment. We disagree, and affirm the district court's denial of defendants' motion to dismiss.

## I.

Defendants were arrested on March 2, 1990, and indicted March 21, 1990. Their trial began with the impanelling of a jury on February 7, 1991, with Judge Battisti presiding. The government presented its evidence, and rested its case on February 12, 1991.

On February 13, 1991, the Cleveland Plain Dealer published a front-page article entitled: "U.S. Probes Battisti's Handling of 1988 Case." Judge Battisti subsequently made the article a part of the record. In pertinent part, the article stated:

> The investigation allegedly involves hearings Battisti conducted after he was notified by former U.S. Attorney Patrick M. McLaughlin that a defendant in his court had told an undercover F.B.I. agent he knew someone who could influence the judge.

> The defendant, James V. Petrella Sr., 61, was under indictment on federal auto theft charges. Battisti accused McLaughlin of "shabby political maneuvers in a federal court" and claimed Petrella's allegations were unsubstantiated. He laid down new rules in his court concerning any information that might require a judge to remove himself from the case.

> Battisti heard the case in which Petrella was convicted and sentenced him to three years probation, the first four months of which were to be served in a Youngstown halfway house.

> Before leaving office, McLaughlin confirmed he had asked the Justice Department's Office of Professional Responsibility to investigate Battisti's handling of the Petrella case.

On February 13, 1991, Judge Battisti held a conference of approximately one hour with defendants' attorneys, soliciting their views on how best to proceed with the trial in light of the article. Both defendants and the government stated their opposition to declaration of a mistrial. Judge Battisti decided to voir dire the jury regarding the article, and, if the jurors were aware of the content of the article, to declare a mistrial.

When questioned, five of the jurors revealed that they had either read the article, or heard radio reports on the same topic addressed by the article. In light of the jurors' awareness of an investigation focused upon his handling of a criminal case, Judge Battisti was, appropriately, concerned that the publication of the newspaper article could affect the jurors' impartiality. Prior to declaring a mistrial, the judge found that there was "manifest necessity to declare a mistrial as a result of [the] publicity ... [and that] [t]hese conditions ... might ... tilt [the] entire proceeding one way or another." After declaring a mistrial, the judge further explained his reasoning, stating:

> My reasons for this, of course, have to do with the fact that the jurors have—a number of the jurors—have read or heard the publicity that appeared in the Plain dealer [sic] this morning. That article will become a part of the record. I don't think it needs to be explained any further, unless counsel wish for a further explanation from the Court.

> *It certainly would be unseemly to say the least for me to poll this jury as to whether they're going to have any confidence in the Judge, and believe him, and follow his instructions after reading this sort of thing that they've read this morning, and heard this morning.*

(Emphasis added.) Having declared a mistrial, Judge Battisti dismissed the jury, and recused himself from any further consideration of the case.

On March 5, 1991, defendants' case was transferred to the docket of Judge Manos. Defendants filed their motion to dismiss on March 27, 1991. Judge Manos entered an order denying the motion on May 21, 1991.

On appeal, defendants present this court with a single issue; whether Judge Manos erred in finding that Judge Battisti had not abused his discretion in ruling that he was

presented with a manifest necessity for the declaration of a mistrial.

## II.

This court has jurisdiction to hear defendants' interlocutory appeal from the denial of their motion to dismiss on double jeopardy grounds. 28 U.S.C. § 1291; *Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977).

It is within a district court's sound discretion to declare a mistrial. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Jones v. Hogg,* 732 F.2d 53, 56 n. 1 (6th Cir.1984). We review *de novo* a district court's denial of a motion to dismiss on double jeopardy grounds. *United States v. Goland,* 897 F.2d 405, 408 (9th Cir.1990). We look to the record of the initial trial. While the Constitution does not require a trial judge to conduct a hearing on the record, the record must support the finding that manifest necessity justified the declaration of a mistrial. *United States v. Bates,* 917 F.2d 388, 397 n. 12 (9th Cir.1990); *Arizona v. Washington,* 434 U.S. 497, 516–17, 98 S.Ct. 824, 835–36, 54 L.Ed.2d 717 (1978).

The Constitution directs that no person shall twice be put in jeopardy of life or limb for the same offense, whether by being twice punished or twice tried. *U.S. Const. Amend. V.; Price v. Georgia,* 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970). The Fifth Amendment's prohibition against twice placing a defendant in jeopardy has been recognized by the Supreme Court as "fundamental to the American scheme of justice," *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion), in reflecting a policy of finality for the benefit of criminal defendants. See *Jones,* 732 F.2d at 54. Embodied within the policy of finality is the "valued right" granted to a defendant by the Double Jeopardy Clause "to have his trial completed by a particular tribunal." *Jorn,* 400 U.S. at 484, 91 S.Ct. at 557 (citing *Wade v. Hunter,* 336 U.S. at 689, 69 S.Ct. at 837). The Court described the basis for the prohibition in *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), emphasizing that for the state to be permitted to make repeated efforts to convict an individual would violate an idea "deeply ingrained in Anglo–American jurisprudence." *Id.* at 187, 78 S.Ct. at 223. Unfettered reprosecution would result in subjecting the accused to "embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id.* at 188, 78 S.Ct. at 223.

The Double Jeopardy Clause, however, will not act as an absolute bar in every case. In some circumstances, a defendant's right to have his case resolved by a particular tribunal will be subordinate to the larger interest of the public in "fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). When a mistrial has been declared, reprosecution is generally permissible if the declaration came at the request or with the acquiescence of the defendant. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). In the absence of such consent, reprosecution is not barred where a "manifest necessity" exists to declare a mistrial in the defendant's initial prosecution. *Perez,* 22 U.S. (9 Wheat.) at 580; *Washington,* 434 U.S. at 505–06, 98 S.Ct. at 830–31; *United States v. Sanford,* 429 U.S. 14, 16, 97 S.Ct. 20, 21, 50 L.Ed.2d 17 (1976) (per curiam). In *Perez,* Justice Story stated the standard to be applied in determining whether retrial is permissible following a mistrial declared without the consent of the accused:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to inter-

fere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*Perez*, 22 U.S. (9 Wheat.) at 580. This test has been consistently followed. *See Jones*, 732 F.2d at 55.

■ In light of Justice Story's recognition of the impossibility of stating all the circumstances in which a manifest necessity for declaration of a mistrial may arise, the "manifest necessity" test has never been applied in a mechanical fashion, but is viewed as a flexible standard. *Illinois v. Sommerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973). It is clear that manifest necessity is not synonymous with absolute necessity, but that a "high degree" of necessity must exist before a mistrial may properly be declared. *Washington*, 434 U.S. at 506, 98 S.Ct. at 830. Determining whether a high degree of necessity was presented calls for an analysis of each case upon its particular facts. *See United States v. Jaramillo*, 745 F.2d 1245, 1249 (9th Cir.1984), *cert. denied*, 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985). The particular facts in defendants' case lead us to conclude that Judge Battisti properly exercised his discretion in finding a manifest necessity for declaration of a mistrial.

Reviewing courts are required to respect the setting in which the trial court found itself at the time mistrial was declared. *Washington*, 434 U.S. at 505–06, 98 S.Ct. at 830–31. In this case, Judge Battisti found himself the subject of a broadly disseminated article questioning the propriety of his handling of a criminal case. In such unusual circumstances it is apparent that Judge Battisti correctly concluded that re-

cusal was appropriate, as the possibility was present that his impartiality might be questioned by the jury. 28 U.S.C. § 455(b). On appeal, defendants argue that while recusal was perhaps a legitimate course of action for Judge Battisti to take, the necessity of recusal, and the existence of a manifest necessity for declaration of a mistrial, are not established by reference to the same criteria. Defendants primarily rely upon *United States v. Sartori*, 730 F.2d 973 (4th Cir.1984), arguing that as Judge Battisti, having decided to recuse himself, was presented with a feasible alternative to declaration of a mistrial—substitution of judges pursuant to Federal Rule of Criminal Procedure 25(a)—a manifest necessity for mistrial was not presented. *Sartori* is distinguishable from the facts presented by defendants' case, and we are not persuaded that Judge Battisti was presented with feasible alternatives to mistrial.

In *Sartori*, the defendant, a practitioner of "holistic medicine," accused of selling a chemical compound as a cancer cure, was charged in the district court with mail fraud. After a jury had been impanelled and four government witnesses heard, the district judge declared a mistrial and recused himself from further consideration of the case. *Id.* at 974–75. Prior to trial the judge had informed the parties of his involvement with the American Cancer Society as a "lay leader," and had twice offered to recuse himself from the case. *Id.* In explaining his decision to declare a mistrial, the judge stated his belief that his yearslong involvement with the American Cancer Society rendered his continued presence at trial inconsistent with the appearance of judicial propriety. *Id.* At trial, following an unrecorded bench conference, the court heard arguments from the parties regarding alternatives to mistrial, with the parties requesting that the judge continue to preside over the trial. In the alternative, the government suggested that rather than declare a mistrial, the court should request the assignment of another judge to continue the trial pursuant to Federal Rule of Criminal Procedure 25(a). *Id.* The judge rejected this suggestion, apparently in erroneous reliance on a Fourth Circuit opinion

in a civil case indicating that substitution under the Rule was to be discouraged. *Id.*

In finding that the district court was without a manifest necessity for declaration of a mistrial, the *Sartori* court identified two errors in the district court's action. First, the court concluded that substitution was an available alternative to mistrial, and therefore precluded the existence of a manifest necessity. In *Harris v. Young*, 607 F.2d 1081, 1085 (4th Cir.1979), *cert. denied sub nom. Mitchell v. Harris*, 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980), the court stated:

> In determining whether the trial judge exercised sound discretion in declaring a mistrial, we must consider if there were less drastic alternatives to ending the trial. If less drastic alternatives than a mistrial were available, they should have been employed in order to protect the defendant's interest in promptly ending the trial, and the Commonwealth's interest in rapid prosecution of offenders.

As defendant Sartori's trial had only seen a single day of testimony, and because the issues presented by Sartori's case were neither novel nor too complex for a substitute judge to quickly grasp, the court concluded that substitution was an appropriate less drastic alternative which the trial judge had failed to consider prior to declaring a mistrial. *Sartori*, 730 F.2d at 976. A judge assigned to complete the trial of Cameron and Tinson would face a very different task, as their trial had proceeded to the conclusion of the government's case-in-chief over four trial days.

Second, the Fourth Circuit found that the trial judge had mischaracterized the problem posed to him, as the question he faced was not whether his impartiality might reasonably be questioned, but whether the risk of an appearance of judicial impropriety constituted a manifest necessity for declaration of a mistrial. *Id.* at 977. As the trial judge was without an economic or other interest in the outcome of the case, and given that the defendant did not request recusal prior to impanelling the jury, although it was presented with two opportunities to do so, "the risk was simply not great enough to constitute manifest necessity." *Id.*

Neither of the bases relied upon by the *Sartori* court are presented in the case before us. It is clear from the record that Judge Battisti was well aware of the case law applicable to a mistrial declaration and its potential double jeopardy effect. Judge Battisti reviewed the law and plainly did not confuse his analysis of manifest necessity with the criteria for recusal under 28 U.S.C. § 455(a).

Judge Battisti's concern with juror impartiality mirrors the concerns examined by the Supreme Court in *Washington*. Where the trial judge ordered a mistrial because the defendant's lawyer made improper and prejudicial remarks during his opening statement to the jury, the Court, after finding that "in a strict, literal sense, the mistrial was not 'necessary,'" went on to state:

> Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord *the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors might have been affected* by the comment.

*Washington*, 434 U.S. at 511, 98 S.Ct. at 833 (emphasis added).

The record further reveals that Judge Battisti was made aware of the possibility of substitution under Federal Rule of Criminal Procedure 25(a), which provides:

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial.

The Rule does not define the term "disability," and we need not attempt to do so here. In light of the unique circumstances facing Judge Battisti, we conclude that he appropriately determined that Rule 25(a) did not present a feasible alternative to mistrial.

In *Jaramillo*, the Ninth Circuit reviewed and affirmed the declaration of a mistrial in circumstances analogous to those faced

by Judge Battisti. The trial judge presiding over defendant Jaramillo's jury trial was indicted on seven counts by a grand jury on the third day of trial, and immediately declared a mistrial. *Id.* at 1246. Jaramillo moved to bar retrial on double jeopardy grounds, arguing, *inter alia*, that the initial judge had failed to consider the less drastic alternative of substitution under Rule 25(a). The court, reviewing the denial of Jaramillo's motion, concluded that neither death nor disabling sickness—the two bases for substitution specifically identified by Rule 25(a)—would have an effect upon the integrity of the proceedings held prior to substitution. *Id.* at 1249. However, in the case of a judge under indictment, the Ninth Circuit found that the purported "disability"

> directly implicates the character and integrity of the judge especially in relation to criminal proceedings, the designation of another judge would not remove the appearance of partiality concerning all prior rulings and all actions of the indicted judicial officer, from the inception of the trial. To establish the appearance of justice under such extraordinary circumstances, a new judge would necessarily be compelled to begin the trial anew.

*Id.* We believe that it is not an abuse of discretion for a judge, alleged to be under investigation for his handling of a criminal case, to determine that this directly impinges upon his ability to properly conduct criminal proceedings before him at the time reports of the investigation are disseminated, and to hold that the designation of another judge would not suffice to protect the integrity of the judicial process. The flexibility of the manifest necessity standard; the requirement to respect the setting in which the trial judge found himself; the "historically unique" problems faced by a trial judge under indictment, calling into question his moral fitness to sit as a judge; removed Rule 25(a) from the realm of available less drastic alternatives to mistrial.

*Id.* We conclude that Judge Battisti's refusal to request substitution under Rule 25(a) did not render his decision to declare a mistrial an abuse of discretion.[1]

Defendants lastly argue that Judge Battisti, in effect, *sua sponte* declared a mistrial, and failed to allow defense counsel a meaningful opportunity to research and present the alternatives to mistrial which defendants have examined in their brief on appeal. This argument is not supported by the record and we reject it.

A series of factors applicable to determine whether a trial court abused its discretion in declaring a mistrial have been stated by the Ninth Circuit:

> Has the trial judge (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered alternatives to a mistrial and chosen the alternative least harmful to a defendant's rights, (3) acted deliberately instead of abruptly, and (4) properly determined that the defendant would benefit from the declaration of a mistrial?

*United States v. Bates*, 917 F.2d 388, 396 (9th Cir.1990). From the record it can only be concluded that Judge Battisti acted in accordance with these factors. Judge Battisti conducted an unrecorded conference with defendants' attorneys prior to declaring the mistrial. On the record, while presenting their objections to a mistrial, and having argued the possibility of substitution under Rule 25(a), defense counsel recognized that a discussion considering alternatives to mistrial had been held, and that the judge was not acting precipitously:

> THE COURT: I should also like to note on the record that the defendants were given an opportunity to raise their objections prior to my decision this morning. I don't mean anything by that other than the fact that that happened, and I called you into chambers. I discussed the matter with you. We did not put it on the record, because we didn't—it was known that I was going to come out into

---

1. Defendants contend that an additional less drastic alternative was open to Judge Battisti in that "he could have continued with the trial until the jury reached a verdict, and if a guilty verdict was returned, another judge could have presided over the sentencing of the Defendants." In light of our conclusion that Judge Battisti appropriately recused himself from the case, we find that defendants' proffered alternative did not constitute an available alternative.

the courtroom and put this on the record. But, you were not caught by surprise when you came into the courtroom this morning. We had a long discussion. We discussed the matter for at least an hour in my chambers.

MR. LONGO: That is true, and I didn't mean to suggest that it wasn't discussed.

THE COURT: I know that. I'm only putting it on the record. And you have no—you cannot possibly have failed to recollect that, Mr. Rossman; is that right?

MR. ROSSMAN: No, absolutely not, Judge. I didn't mean to suggest that was the case, either.

The record is unambiguous. Defendants' contention that Judge Battisti failed to carefully consider his decision and explore alternatives is without merit. We note again that a trial court is not required to conduct a formal hearing on the record regarding its decision, *Washington*, 434 U.S. at 516–17, 98 S.Ct. at 835–36, and conclude that the record supports the finding of a manifest necessity.

AFFIRMED.