**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 94-5017

_____

D. C. Docket No. 95-915-CR-WCO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANGEL CERCEDA,

Defendant-Appellant,

* * * * * *

---------------
No. 95-4610
----------------

D.C. Docket No. 91-698-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

COURTNEY RICARDO ALFORD, a.k.a. "Rickey,"
EDWARD BERNARD WILLIAMS, a.k.a. "Bernard,"
NATHANIEL DEAN,

Defendants-Appellees.

* * * * * *

---------------
No. 95-4611
---------------
D.C. Docket No. 91-704-CR-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

HECTOR FERNANDEZ-DOMINGUEZ,

Defendant-Appellee.

\* \* \* \* \* \*

---------------
No. 95-4612
---------------
D. C. Docket No. 92-750-CR-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JESUS E. CARDONA,

Defendant-Appellee.

\* \* \* \* \* \*

2

---------------
No. 95-4613
---------------
D. C. Docket No. 92-6023-CR-JAG

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CARLOS HERNANDEZ,

Defendant-Appellee.

\* \* \* \* \* \*

---------------
No. 95-4617
---------------
D. C. Docket No. 91-681-CR-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ADOLFO MESTRIL, a.k.a. "El Gordo,"
JOSE HERMINIO BENITEZ, a.k.a. "William
Muniz," a.k.a "Emilio," HERIBERTO ALVAREZ,
ELPIDIO, PEDRO IGLESIAS-CRUZ, a.k.a.
"Budweiser,"

Defendants-Appellees.

3

\* \* \* \* \* \*

---------------

No. 95-4618

---------------

D. C. Docket No. 91-6180-CR-JAG

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

MINNIE RUTH WILLIAMS,
RALPH W. CORKER,

Defendants-Appellees.

\* \* \* \* \* \*

---------------

No. 95-4626

---------------

D.C. Docket No. 90-741-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

HIRAM MARTINEZ, JR.,

Defendant-Appellee.

4

\* \* \* \* \* \*

---------------

No. 95-4628

---------------

D.C. Docket No. 91-915-CR-EBD

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ANGEL CERCEDA,

Defendant-Appellee.

\* \* \* \* \* \*

---------------

No. 95-4629

---------------

D. C. Docket No. 92-39-CR-LCN

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

DIOGENES PALACIOS,

Defendant-Appellee.

5

\* \* \* \* \* \*

----------------

No. 95-4630

----------------

D. C. Docket No. 92-230-CR-SM

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

FRED DE LA MATA, MANUEL
A. CALAS, OSCAR CASTILLA
and ENRIQUE FERNANDEZ,

Defendants-Appellees.

\* \* \* \* \* \*

----------------

No. 95-4631

--------------

D. C. Docket No. 92-301-CR-UU-B

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

STEVEN JOHNSON,

Defendant-Appellee.

\* \* \* \* \* \*

6

---------------
No. 95-4632
---------------
D. C. Docket No. 92-573-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

FRANCISCO JOSE ARIAS,
GUSTAVO JAVIER PIRELA-AVILA,

Defendants-Appellees.

\* \* \* \* \* \*
---------------
No. 95-4633
---------------
D. C. Docket No. 93-1-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ENRIQUE ACOSTA,
MILCIADES JIMINEZ,

Defendants-Appellees.

\* \* \* \* \* \*

---------------

No. 95-4634

---------------

D. C. Docket No. 93-31-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CARLOS A. ZAPATA,

Defendant-Appellee.

\* \* \* \* \* \*

---------------

No. 95-4635

---------------

D. C. Docket No. 93-72-CR-SM

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JOSE MICHAEL VILARINO,

Defendant-Appellee.

8

\* \* \* \* \* \*
---------------
No. 95-4659
---------------
D. C. Docket No. 91-413-CR-WDF

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

VICTOR LONG, ISRAEL AEL,
MIGUEL CAMPOS, JOSE VISOZO,
NARCISCO SUAREZ, and OSCAR
KARIN, a.k.a. MAS,

Defendants-Appellees.

\* \* \* \* \* \*
---------------
No. 95-5244
---------------
D. C. Docket No. 91-8033-CR-MARCUS

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JAVIER BONILLA,

Defendant-Appellee.

9

\* \* \* \* \* \*

---------------

No. 95-5298

---------------

D. C. Docket No. 92-39-CR-Nesbitt

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

DIOGENES PALACIOS,

Defendant-Appellee.

\* \* \* \* \* \*

---------------

No. 95-5369

---------------

D. C. Docket No. 92-117-CR-Moreno

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ZAIDA FATIMA BORGE,
a.k.a. Gorda,

Defendant-Appellee.

\* \* \* \* \* \*

10

---------------
No. 95-5566
---------------
D. C. Docket No. 93-319-CR-EBD

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

FRANCIS JOSEPH BRADLEY,
a.k.a. Frank Bradley,

Defendant-Appellee.

* * * * * *

---------------
No. 96-4584
---------------
D. C. Docket No. 93-31-CR-GRAHAM

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JAIME A. DURANGO,

Defendant-Appellee,

11

* * * * * *

---------------
No. 96-5043
---------------
D. C. Docket No. 92-117-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ZAIDA FATIMA BORGE,
a.k.a. Gorda,

Defendant-Appellee.

* * * * * *

---------------
No. 96-5067
---------------
D. C. Docket No. 91-698-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

NATHANIEL DEAN,
EDWARD BERNARD WILLIAMS,

Defendants-Appellees.

---------------
Appeals from the United States District Court for the
Southern District of Florida
---------------
**(April 23, 1998)**

Before TJOFLAT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

12

This appeal examines the point at which a district court judge being investigated by the grand jury should recuse himself in accordance with Title 28 U.S.C. § 455(a) which requires that a judge disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." Judge Michael K. Moore was questioned by FBI and IRS agents and served with a grand jury *subpoena duces tecum* as early as November 1992. He continued to try and sentence criminal defendants until October 1993, when he recused himself *sua sponte* from all criminal cases after news reports revealed he was the target of a grand jury investigation. Criminal defendants who had been tried and/or sentenced by Judge Moore between November 1992 and October 1993 moved for new trials and/or sentencing hearings on the grounds that Judge Moore should have recused himself when he first learned that he was being investigated. Judge William C. O'Kelley, then Chief Judge of the Northern District of Georgia, specifically assigned to hear these motions, ruled in favor of defendants, holding that Judge Moore should have recused himself in November 1992.

On appeal, the government argues Judge Moore did not abuse his discretion by not recusing when he first learned he was being investigated, and alternatively, assuming Judge Moore did err in not recusing earlier, Judge O'Kelley abused his discretion in ordering new trials and or sentencing hearings across the board rather than determining whether such action was necessary on a case-by-case basis. Based on the unique facts of this case, found by Judge O'Kelley, we affirm.

On October 11 and 13, 1993, two Miami newspapers reported that the United States Attorney's Office in Brooklyn, New York, was investigating Judge Moore for allegedly accepting gratuities worth thousands of dollars from Central Security Systems, Inc. (CSSI) while he served as Director of the United States Marshal's Service. On October 15, 1993, Judge Moore entered an

13

order *sua sponte* recusing himself from all cases in which the United States was a party. Those cases were reassigned to other judges in the Southern District.

In early 1994, defendants in 24 consolidated cases who had been tried and/or sentenced before Judge Moore between November 11, 1992 and October 15, 1993, prior to his recusal, filed motions for new trials and/or new sentencing hearings. Those defendants argued that under Title 28, U.S.C. § 455(a), Judge Moore should have recused himself from all cases involving the United States as early as November 1992 when he was first interviewed by the agents from the FBI and IRS and served with a grand jury *subpoena duces tecum*.

Chief Judge O'Kelley of the Northern District of Georgia was assigned to hear the recusal motions. In orders entered on September 12, 1994, Chief Judge O'Kelley held that Judge Moore should have recused himself in November 1992 and as a prophylactic remedy ordered new trials and/or sentencing hearings. One of these orders, in the case of *United States v. Garrudo,* is reported at 869 F. Supp. 1574 (S.D. Fla. 1994).

The government moved for reconsideration, challenging both the court's determination that Judge Moore should have recused himself earlier and the court's broad-brush remedy. Judge O'Kelley conducted an evidentiary hearing during which Judge Moore was the sole witness subject to thorough examination and cross-examination. About one month after the evidentiary hearing, Chief Judge O'Kelley entered orders denying the government's motion. Judge O'Kelley made additional findings of fact and reiterated his earlier conclusion that "an objective lay observer knowing all the facts on November 11, 1992, could conclude that Judge Moore's impartiality could be compromised." Regarding the remedy, Judge O'Kelley stood by his determination that new trial and/or sentencing hearings were required. The government filed numerous appeals in our Court

14

challenging Judge O'Kelley's orders. Because the cases evolved from the same set of operative facts and raised the same core substantive issue, we granted government's motion to consolidate and have before us now 24 appeals for review.

The parties have brought to our attention a few procedural points which need to be addressed.

*First,* two of the defendants, Angel Cerceda and Carlos Hernandez, moved to dismiss the government's appeal on the ground that federal law did not grant the government the right to appeal from orders granting new sentencing hearings. The government needs specific statutory authority to appeal in a criminal case, which authority is contained in 18 U.S.C. § 3731. *See United States v. Scott*, 437 U.S. 82, 84-85 (1978) (discussing the enactment of § 3731 to provide government appeals in criminal cases). Section 3731 does not expressly provide for government appeals from orders granting new sentencing hearings. The issue, not heretofore decided by this Court, is whether section 3731, a statute that provides it should be liberally construed to effectuate its purposes, can be so construed as to authorize this appeal. For the purpose of this case, unique on its facts, we assume without deciding that the government has statutory standing to appeal. We find this appropriate here where the jurisdictional law is uncharted, our resolution of the jurisdictional question would not affect the outcome in favor of the defendants, and the decision here reached does not develop or change the law.

*Second*, the timeliness of the government's cross-appeal in the *Cerceda* case has been raised. We exercise our discretion to disregard any procedural irregularity under the circumstances of this case.

15

*Third*, because of the administrative handling of this case in the consolidation of cases for consideration of the decision of Judge O'Kelley to order resentencing in all cases tried before, but sentenced after, November 1992, Cerceda's appeal from the decision not to grant a retrial of his case, tried before November 1992, has never been briefed. By separate order we are setting a briefing schedule on Cerceda's appeal, the case to be presented to this panel upon the completion of briefing.

### *The Need for Recusal*

The government contends that Judge O'Kelley failed to consider numerous significant and uncontroverted facts and misapplied the applicable legal standard in deciding that Judge Moore should have recused himself.

Section 455(a) states: Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality     might reasonably be questioned." 28 U.S.C. § 455(a). The standard under § 455(a) is an objective one,  focusing on a hypothetical reasonable observer. The test of whether to recuse is one of objective reasonableness, that is, whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Torkington,* 874 F.2d 1441, 1446 (11th Cir. 1989); *see also Liljeberg v. Health Servs. Acquisition Corp*, 486 U.S. 847, 859-60 (1988). A judge is under an "affirmative, self-enforcing obligation to recuse himself *sua sponte* whenever the proper grounds exist," and is required to resolve any doubts in favor of disqualification. *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989).

We found no case with similar facts upon which we can rely for direction. Both parties have cited to several recusal cases to support their opposing positions, all of which are solid authority for

16

the general principles we have discussed but factually inapposite. *See,* e.g., *United States v. Jaramillo*, 745 F.2d 1245, 1248 (9th Cir. 1984) (judge indicted while presiding over criminal trial properly recused under § 455(a)), *cert. denied*, 471 U.S. 1066 (1985); *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981) (fact that district court judge had close relationship with governor and defendant, a former state senator, was chairman of legislative committee that investigated governor and was reportedly helpful and fact that judge had been involved to some extent in that investigation no basis for recusal); *Laxalt v. McClatchy*, 602 F. Supp 214, 217-18 (D. Nev. 1985) (magistrate judge not disqualified under § 455(a) from hearing pretrial proceedings in action brought by United States Senator to whom magistrate had unsuccessfully applied for appointment as district judge). We agree with the Tenth Circuit's assessment that "cases within § 455(a) are extremely fact driven 'and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'" *Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995) (quotation omitted).

In applying this standard, we look to the objective facts in the record that might reasonably lead an objective observer to question Judge Moore's impartiality. Judge Moore confirmed that he was told on or about November 11, 1992, that he was the subject of a pending grand jury investigation in the Eastern District of New York. On that day, an FBI special agent and an IRS agent interviewed Judge Moore and served him with a grand jury *subpoena duces tecum* seeking his bank and credit card records. Judge Moore testified that the interview concerned CSSI. On or about November 18, 1992, Nicholas Pastoressa, the former president of CSSI, a company that contracted with the United States Marshal's Service for the provision of security in federal courthouses at various locations, entered a plea of guilty in the United States District Court for the

17

Eastern District of New York, to a charge of having conspired to pay bribes and illegal gratuities to persons in the U.S. Marshal's Service. Pastoressa's plea and other information about the case were carried by a major news wire service and printed in the *New York Times*, which has a substantial circulation in Dade and Broward counties, and the *Los Angeles Times* between November 19 and November 24, 1992.

Judge Moore had both a business and social relationship with Pastoressa. Judge Moore testified that during his tenure at the Marshal's Service, he accepted certain gifts and refused others offered by Pastoressa and his associate John Caldera. He testified that prior to the meeting with the agents, he had some knowledge that CSSI was under investigation, but he was uncertain as to the specifics.

The basis for the government's allegation of error is that Judge O'Kelley failed to impute all the necessary knowledge to the hypothetical reasonable observer assessing the appearance of impartiality, which the government specifies as:

– a detailed knowledge of the workings of a grand jury investigation, including the significance of the fact that prosecutors in Florida would play no role in an investigation that originated in New York,

– knowledge of the contents of the Assistant United States Attorney's Manual, and the distinction the manual makes between the "subject" of an investigation (someone who knows something about the investigation) versus a "target" (a person to whom the prosecutor or the grand jury has substantial evidence linking that person to the commission of a crime),

– facts pertaining to the status of the CSSI contracts in controversy when Judge Moore became director of the Marshal's Service, specifically that the contracts with the Service

18

were already in place and that Judge Moore was not involved in the renewal of those contracts.

– knowledge  that Judge Moore complied with a grand jury *subpoena duces tecum,* freely responded to the agent's questions without a lawyer,  was told at that interview that he was not a target but considered a subject, did not recall being read his rights, and did not contact a lawyer after that meeting.

Judge O'Kelley correctly declined to accept this depiction of the "disinterested, lay observer."  The facts put forth by the government pertain to Judge Moore's subjective knowledge and assessments he may have made based on his specific knowledge.  Such knowledge may be relevant to the question of actual bias, but the concern underlying section 455(a) is not whether the judge is actually biased but simply whether it might appear so.  *Liteky v. United States,* ___ U.S. ___, 114 S.Ct. 1147, 1154 (1994).

> The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.

*Liljeberg,* 486 U.S. at 860 (quotation omitted).

Judge O'Kelley kept the analysis away from the technical knowledge as to the differences between a subject or target of an investigation or subjective facts known only to Judge Moore.

The government relies upon the policy of the Judicial Conference of the United States and the Eleventh Circuit Judicial Council's protocol for its argument that a judge is not required to recuse automatically until he has been identified as a target of an investigation.  This policy and the

19

established protocol were adopted a few years after the events at issue here. In its report dated

September 19, 1995, The Judicial Conference of the United States, agreed to

> urge each circuit judicial council to adopt a mandatory self-reporting rule that requires federal judges to inform their respective chief judge, on a confidential basis, whenever they have been indicted, arrested, or informed that they are the target of a federal or state criminal investigation for a crime which is subject to punishment by imprisonment of one year or more.

Judicial Conference Report at 87.

On September 5, 1996, the Eleventh Circuit Judicial Council adopted a protocol concerning recusal

of judicial officers that provides:

> Judicial officers who are implicated in a federal criminal process by way of arrest, or who are informed that they are the subject or target of a federal criminal investigation for a crime that is punishable by imprisonment of one year or more may continue with their criminal and civil dockets and administrative duties until the Judicial Council determines to adopt limitations that the nature of the investigation and charges justify.  However, after consultation with other judges of his or her court, the implicated judge may discontinue handling civil, criminal and administrative duties that the judge concludes the nature of the investigation and charges justify.

While both provisions make clear that a judge must take some action when that judge

becomes a target of an investigation, reading them to be consistent with the relevant statutes, they

do not bar a requirement for recusal at an earlier point should the facts and circumstances so dictate.

Nor do we find dispositive a recent opinion interpreting Standard 3.  In *In re Lopez-Lukis*,

a panel of this Court held that "the refusal of a district court judge to recuse himself from every

criminal case on his docket if he is under criminal investigation by the Department of Justice is not

a clear abuse of discretion or usurpation of judicial power warranting mandamus relief."  113 F.3d

1187, 1188 (11th Cir. 1997). The panel noted, however, that there was nothing about the facts and

circumstances in that particular case that would make it so. 113 F.3d at 1188. Each case must turn on its own unique facts.

*The Remedy for Failure to Recuse*

The government contends Judge O'Kelley's grant of new trials and/or sentencing hearings in every case was too drastic and suggests instead that the factors enunciated in *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988), be applied on a case-by-case basis to determine whether there was evidence of bias in the trial record or some explicit connection between the alleged errors and the appearance of bias.

The Court in *Liljeberg* provided a three-part test to determine whether a section 455(a) violation should relieve a party from final judgment. A court must determine *first,* "the risk of injustice to the parties in the particular case," *second,* "the risk that the denial of relief will produce injustice in other cases," and *third,* "the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864.

The decision as to a remedy here was based solely on the third factor in *Liljeberg,* and emphasized the importance of protecting the appearance of justice, impartiality and objectivity so as to "promote public confidence in the integrity of the judicial process." *Liljeberg,* 486 U.S. at 858, n.7. As the district court noted, "this case is an extraordinary circumstance and, with this decision as precedent, should not occur again. Although the finality of judgment is to be preserved, in this instance the court cannot run the risk that the reputation of the justice system may be tarnished." On this basis, we affirm the court's orders granting new trials and/or sentencing hearings.

The government argues that one of the cases, *United States v. De La Mata*, No. 95-4630, must be analyzed differently from the rest. The case involved a 70-count indictment relating to bank fraud and racketeering that took about two-and-a half months to try. Jury selection began on October 19, 1992, and the jury returned its verdicts on December 30, 1992. The trial had completed its 15th day when Judge Moore met with FBI and IRS agents on November 15, 1992. The government is concerned with double jeopardy problems should we affirm in this particular case because had Judge Moore recused himself in November 1992, he would have had to declare a mistrial. First, double jeopardy is not a concern when determining whether the standards for recusal under section 455(a) have been met. *Kelly,* 888 F.2d at 746. Second, a judge's proper exercise of discretion to recuse himself satisfies the manifest necessity requirement, thereby permitting a retrial. 888 F.2d at 746.

A thorough reading of Judge O'Kelley's decision, based on the record before him under the standard of review available on review, reveals that the judgment appealed is due to be affirmed. The purpose of this opinion is to affirm the findings and the application of law in Judge O'Kelley's opinion, based on the record that he had before him. It is not intended to extend or limit the decision that he made and the reasons for it.

Various motions have been carried with the case. The government's motion for the Court to take judicial notice of appellate briefs filed in the *Lopez-Lukis* case is denied. The defendants' request that this Court take judicial notice under Fed. R. Evid. 201 of the criminal informations filed against Nicholas Pastoressa, Anthony Manfre, and John Caldara, principals of CSSI, which they attached to their brief as Appendix Two is denied. The defendant Fred DeLaMata's motion, filed under seal seeking to supplement the record or for the Court to take judicial notice of letters

22

submitted by the government in support of sentencing reductions for Pastoressa, Manfre and Caldara. is denied.

**AFFIRMED.**