THOMAS, Circuit Judge,
with whom REINHARDT, .FLETCHER, FISHER, and BERZON, Circuit Judges, join, dissenting:
By all indications, the jurors in James Harrison’s capital trial had decided to acquit him of the death penalty. They had informed the trial judge that they were deadlocked between life with parole and life without parole. The trial judge acknowledged that the jury “was not discussing the death penalty.” However, rather than conduct the jury poll requested by defense counsel to ascertain whether the jury had reached, or could reach, a verdict on the death penalty, the trial judge summarily declared the trial over and discharged the jury.
We will never know with certainty what the jury would have answered if asked. But we do know this: Harrison’s chance of a likely acquittal on the death penalty left the courthouse with the jurors.
The Double Jeopardy Clause protects the “valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him.” Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) (emphasis added). Put another way, “[c]riminal defendants have a right to have the jury first impaneled to try them reach a verdict.” United States v. Bates, 917 F.2d 388, 392 (9th Cir.1991). Thus, a defendant may not be tried on the same issue again if a mistrial is declared without his consent and without “manifest necessity.” United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).
There was no need, much less manifest necessity, for discharging the jury in this case without conducting the requested jury poll that would have answered the question of whether the jurors had reached a death penalty verdict. The trial judge violated Harrison’s right to have the “particular tribunal give complete consideration to his case.” United States v. Sammaripa, 55 F.3d 433, 434 (9th Cir.1995). Harrison was deprived of a likely acquittal, and the Double Jeopardy Clause prevents him from being subject to the death penalty again.
*907 I
“[T]he Supreme Court has consistently recognized a major purpose of the double jeopardy clause as the protection of a defendant’s ‘valued right to have his trial completed by a particular tribunal.’ ” Bretz v. Crist, 546 F.2d 1336, 1345 n. 21 (9th Cir.1976) (quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)) (collecting cases), aff'd, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). This right, which has “roots deep in the historic development of trial by jury in the Anglo-American system of criminal justice,” Crist v. Bretz, 437 U.S. 28, 36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), is “ ‘valued ... because ... the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial.’ ” Arizona v. Washington, 434 U.S. 497, 508 n. 25, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (quoting United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion)). As the Court explained:
The reasons why this “valued right” merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.
Id. at 503-05, 98 S.Ct. 824 (footnotes omitted).
Accordingly, trial courts must use caution in deciding whether or not to grant a mistrial sua sponte. As Justice Stevens has noted, the Supreme Court has
repeatedly reaffirmed that the power to discharge the jury prior to verdict should be reserved for “extraordinary and striking circumstances,” Downum[, 372 U.S. at 736, 83 S.Ct. 1033] (internal quotation marks omitted); that the trial judge may not take this “weighty” step, [Illinois v. Somerville, 410 U.S. 458, 471, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) ], unless and until he has “scrupulously]” assessed the situation and “take[n] care to assure himself that [it] warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal,” [Jorn, 400 U.S. at 485, 91 S.Ct. 547]; that, to exercise sound discretion, the judge may not act “irrationally,” “irresponsibly,” or “precipitately” but must instead act “deliberately” and “careful[ly],” Washington, 434 U.S.[ at 514-15, 98 S.Ct. 824]; and that, in view of “the elusive nature of the problem,” mechanical rules are no substitute in the double jeopardy mistrial context for the sensitive application of general standards, Jorn, 400 U.S.[ at 485, 91 S.Ct. 547].
Renico v. Lett, — U.S. -, 130 S.Ct. 1855, 1869, 176 L.Ed.2d 678 (2010) (Stevens, J., dissenting).
Of course, under certain circumstances, the defendant’s right to have his case completed before a particular tribunal must “be subordinated to the public’s interest in fair trials designed to end in just judgments.” Wade, 336 U.S. at 689, 69 S.Ct. 834. Hence, we have the “manifest necessity” rule. The rule is not one of recent judicial invention. Indeed, the “classic formulation of the test,” which “has been quoted over and over again to provide guidance in the decision of a wide variety *908 of cases,” Washington, 434 U.S. at 506, 98 S.Ct. 824, comes from Justice Story’s opinion in Perez:
[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.
22 U.S. (9 Wheat.) at 580.
“The rule announced in the Perez case has been the basis for all later decisions of [the Supreme Court] on double jeopardy.” Wade, 336 U.S. at 690, 69 S.Ct. 834; accord. Renico, — U.S. at -, 130 S.Ct. at 1862-64. Accordingly, it is well-settled that “[a]fter jeopardy attaches, the court’s declaration of a mistrial ... does not bar retrial where the mistrial was declared because of ‘manifest necessity.’ ” Sammaripa, 55 F.3d at 434 (quoting Thomas v. Municipal Court of Antelope Valley J.D., 878 F.2d 285, 287 (9th Cir.1989)).
“[T]he Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant’s” right to a decision by a particular tribunal “until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.” Jorn, 400 U.S. at 485, 91 S.Ct. 547. It entails a “heavy” burden before a mistrial can be declared sua. sponte. Washington, 434 U.S. at 505, 98 S.Ct. 824.
As one would expect, “a jury’s inability to reach a decision is the kind of ‘manifest necessity’ that permits the declaration of a mistrial.” Yeager v. United States, — U.S. -, 129 S.Ct. 2360, 2366, 174 L.Ed.2d 78 (2009) (citing Washington, 434 U.S. at 505-06, 98 S.Ct. 824; Perez, 22 U.S. (9 Wheat.) at 580). In such circumstances, we rightly afford great deference to the trial court’s decision, but its discretion in this respect is not unfettered: as the Supreme Court has recently observed,
Perez itself noted that the judge’s exercise of discretion must be “sound,” [22 U.S. (9 Wheat.) at 580], and we have made clear that “[i]f the record reveals that the trial judge has failed to exercise the ‘sound discretion’ entrusted to him, the reason for such deference by an appellate court disappears.” Washington, [434 U.S. at 510 n. 28, 98 S.Ct. 824],
Renico, — U.S. at —, 130 S.Ct. at 1863.
In synthesizing Supreme Court jurisprudence, we have applied four factors in determining whether a trial court has exercised its discretion properly in finding “manifest necessity” and granting a mistrial: namely, whether it has “(1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chosen the” course of action “least harmful to a defendant’s rights, (3) acted deliberately instead of abruptly, and (4) properly determined that the defendant would benefit from the declaration of mistrial.” Bates, 917 F.2d at 396.
*909 As to the first Bates factor, we have held that the manifest necessity requirement was not met when the trial court “allowed no opportunity for argument from either side on the need for a mistrial.” United States v. Sanders, 591 F.2d 1293, 1298 (9th Cir.1979). Similarly, in Jom, the Supreme Court held that the trial court abused its discretion in discharging the jury without hearing from counsel. 400 U.S. at 487, 91 S.Ct. 547.
The second key consideration in assessing the “manifest necessity” of declaring a mistrial sua sponte is whether the trial judge adequately considered alternatives. The Supreme Court emphasized the importance of this factor in Jom, noting that the trial judge had not considered alternatives and “made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial.” 400 U.S. at 487, 91 S.Ct. 547.
Our sister circuits have also emphasized that no “manifest necessity” exists where there are reasonable alternatives to declaring a mistrial. In United States v. Rivera, 384 F.3d 49 (3d Cir.2004), the Third Circuit held that the Double Jeopardy Clause barred reprosecution because the district court did not “giv[e] due consideration to reasonably available alternatives to the drastic measure of a mistrial.” Id. at 56 (“Critically, a mistrial must not be declared without prudent consideration of reasonable alternatives.”); see also Love v. Morton, 112 F.3d 131, 137 (3d Cir.1997) (“To demonstrate manifest necessity, the state must show that under the circumstances the trial judge ‘had no alternative to the declaration of a mistrial.’ ... The trial judge must consider and exhaust all other possibilities.” (citation omitted) (quoting United States v. McKoy, 591 F.2d 218, 222 (3d Cir.1979))). As the Third Circuit concluded in Rivera, “[wjhere a District Court sua sponte declares a mistrial in haste, without carefully considering alternatives available to it, it cannot be said to be acting under a manifest necessity.” 384 F.3d at 56. The First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh circuits have reached a similar conclusion.[1] Our own circuit’s *910 precedent on the matter could not be more clear. See Bates, 917 F.2d at 396 (“A trial court should consider and correctly evaluate the alternatives to a mistrial.”).
The third factor is whether the trial court acted deliberately or abruptly. The Supreme Court has held that a trial court abuses its discretion in granting a mistrial when it acts precipitately. Washington, 434 U.S. at 514-15, 98 S.Ct. 824. In Jorn, the Court held that the Double Jeopardy Clause precluded retrial when the trial judge’s abrupt declaration of mistrial provided the defendant with no opportunity to object to the discharge of the jury. 400 U.S. at 487, 91 S.Ct. 547. As we noted in Bates, “[a] trial court’s abrupt declaration of a mistrial suggests that it failed to exercise sound discretion.” 917 F.2d at 396; see also Lovinger, 845 F.2d at 746 (“abrupt and precipitate action ... is inconsistent with the exercise of sound discretion under the ‘manifest necessity’ test”). On the other hand, evidence of deliberation by the trial court indicates that it exercised sound discretion. See Washington, 434 U.S. at 516, 98 S.Ct. 824 (praising the trial judge for acting “responsibly and deliberately” and for “according] careful consideration to [the defendant’s] interest in having the trial concluded in a single proceeding”); United States v. Elliot, 463 F.3d 858, 867 (9th Cir.2006) (“Rather than hastily declaring a mistrial, the district court made every effort to resolve the conflict and continue the trial.”).
The fourth factor is whether the court properly determined that the defendant would benefit from the declaration of mistrial. As we noted in Bates, a well-founded determination that the mistrial would assist the defendant indicates the exercise of sound discretion; an erroneous declaration that the mistrial would assist the defendant may warrant reversal, as might a mistrial declaration that assists only the government. 917 F.2d at 388.
The manifest necessity doctrine also requires, in addition to consideration of the traditional Bates factors, that the trial judge exercise particular care when it appears that the proceedings might result in an acquittal. Indeed, the Double Jeopardy Clause “prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict.” Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). It is improper for a court to declare a mistrial and grant the state, “with all its resources and power,” id. at 187, 78 S.Ct. 221, “another, more favorable opportunity to convict the accused,” Gori v. United States, 367 U.S. 364, 369, 81 S.Ct. 1523, 6 L.Ed.2d 901.(1961).
Finally, the manifest necessity doctrine requires that greater care be exercised in death penalty cases. It commands that “in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner.” Perez, 22 U.S. (9 Wheat.) at 580.
II
When we apply these principles to this capital case, it is readily apparent that no manifest necessity justified the trial judge in declaring a mistrial without permitting the jury poll that Harrison requested.
First, the record is absolutely, crystal clear that the jury might have determined that Harrison should not be put to death. *911 The trial court commenced the discussion with this report:
THE COURT: For the record, we had two notes from two different jurors indicating that the jury was deadlocked between life with and life without [the possibility of parole].
The trial court then observed that “the fact that they’re not considering the death penalty” did not “tell us where they are in terms of the aggravators and the mitigators.” Thus, the court noted, it was important to see the actual verdict forms if the jury had filled them out.
The court then called the jury back and asked the jury foreperson where matters stood. The foreperson replied: “I think it’s at an impasse.” Then, the court inquired whether any of the forms had been completed. The foreperson replied that some forms had been completed. The court instructed the foreperson to hand the forms to the bailiff and, without examining them, summarily discharged the jury. The court did not ask counsel whether they objected to the declaration of mistrial and the discharge of the jury. The court did not invite or consider any alternatives. The court did not make a finding that manifest necessity required a mistrial.
One of the completed and signed jury forms indicated that the jury had found one aggravating factor. The other completed and signed form indicated that the jury had found twenty-four mitigating factors. The forms regarding weighing of the factors and the imposition of punishment were not filled out. Later, three jurors submitted affidavits indicating that the death penalty was “off the table.” One submitted an affidavit stating that it was not.
We do not, of course, know with assurance what verdict the jury would have eventually rendered on the sole question of whether Harrison was to be put to death. We do not even know whether the jury was deadlocked on that question. However, every single bit of record evidence demonstrates a high probability that the jury would not have imposed a death sentence, if the question had been posed.[2]
Second, given the application of Nevada capital sentencing law to these facts, the poll Harrison requested would have been sufficient to determine whether the jury had acquitted him of the death penalty. In signing the verdict forms indicating a finding of one aggravating factor and twenty-four mitigating factors, the jury made one of the two factual findings necessary to establish Harrison’s statutory eligibility for the death penalty. See Nev.Rev. Stat. § 175.554(3). Had the trial court conducted the poll Harrison requested and, prior to declaring a mistrial, simply asked the jury if it had determined whether the mitigating factors outweighed the aggravating factor, we would know, according to Nevada law, whether the jury unanimously “ ‘agree[d] ... that the prosecution ha[d] not proved its case’” that Harrison deserved to die. Poland v. Arizona, 476 U.S. 147, 152, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (quoting Bullington v. Missouri, 451 U.S. 430, 443, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981)). And had the poll results established as much, that would constitute a “finding[ ] sufficient to establish legal entitlement to the life sentence.” Sattazahn v. Pennsylvania, 537 *912 U.S. 101, 108, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003).
When the trial court declared a mistrial without polling the jurors as Harrison requested, it deprived Harrison of his right under the Double Jeopardy Clause to have his case completed by the tribunal summoned to sit in judgment on him. In doing so, the court prevented the jury from giving legal effect to whatever conclusions it had reached,[3] and likely acquitting Harrison of the death penalty. By putting him again in jeopardy of being put to death, the court permitted the state “another, more favorable opportunity to convict the accused,” an opportunity that, but for manifest necessity, the Double Jeopardy Clause forbids. Gori, 367 U.S. at 369, 81 S.Ct. 1523.
Given the particular care required in making mistrial decisions when it appears that a jury might not convict and, more, in capital cases, what was the manifest necessity here? A careful review of the record in light of the Bates factors can only lead to one conclusion: there absolutely was no reason, much less one compelling enough to meet the high “manifest necessity” standard, for discharging the jury without polling it as Harrison requested.
First, the trial court did not ask the parties about the propriety of declaring a mistrial. The record shows that the judge informed counsel about the jury note, defense counsel asked for a poll of the jury, and the government opposed the poll. Critically, the judge did not invite or entertain argument about a mistrial after the foreperson reported in open court that the jury had, in fact, completed two verdict forms.
Second, the trial court did not consider any alternatives. In fact, the judge never expressly denied defense counsel’s request for a jury poll — a viable alternative she rejected out-of-hand when she declared a mistrial and dismissed the jury. She ignored other viable alternatives as well. The judge could have asked the jury whether it was deadlocked on the imposition of the death penalty. The judge could have given an Allen charge[4] or its equivalent under Nevada state law.[5] However, the judge neither considered the possibility nor asked counsel as to their views of providing the jury with additional instructions. She did not ask the parties if they saw any alternatives to a mistrial. In short, the trial judge did not meaningfully consider other courses of action, much less determine which was the one “least harmful to [Harrison’s] rights.” Bates, 917 F.2d at 396.
Third, the trial judge demonstrated none of the deliberation that courts have approved as indicia of a sound exercise of discretion. Rather, the court accepted the foreperson’s representation of deadlock and promptly discharged the jury without further ado. The entire exchange with the jury foreperson and the discharge occupies less than a single transcript page.
Fourth, the trial judge made no determination of whether declaring a mistrial *913 would benefit the defendant. In fact, as discussed, the mistrial severely prejudiced Harrison’s rights.
In sum, consideration of the Bates factors compels the conclusion that there was no “manifest necessity” for the judge to declare a mistrial without conducting the poll Harrison requested. Especially in light of the stakes — this is a capital case where the jury likely acquitted Harrison of the death penalty — the conclusion is clear: the Double Jeopardy Clause prevents subjecting the defendant to the death penalty on retrial. As the Supreme Court observed in Washington, if a judge “discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his valued right to have his trial completed by a particular tribunal.” 434 U.S. at 509, 98 S.Ct. 824 (quotation marks omitted). The jury in this case was discharged when it was likely that it had reached agreement, or could reach agreement, on whether to impose the death penalty. The Constitution forbids Harrison from being placed in jeopardy of death a second time.
Ill
Rather than defend the manifest necessity of declaring a mistrial without polling the jury, the government 'urges affirmance by slaying a stand of straw men and producing a parade of horribles.
The government ardently argues that there was no actual acquittal in this case and therefore that Double Jeopardy protections do not apply. Of course Harrison was not acquitted. But “[t]he prohibition is not against being twice punished, but against being twice put in jeopardy.” Ball v. United States, 163 U.S. 662, 669, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The right at issue here is Harrison’s right to have the trial completed by the jury impaneled to sit in judgment on him. The fact that the trial was not completed demonstrates the violation of the right, not the vindication of it.
The government argues that criminal defendants are not entitled to a per se rule requiring jury polling. Perhaps so, but that question is irrelevant to the issue of manifest necessity. The Supreme Court has emphasized, time and again, that the determination of manifest necessity must be done on a case-by-case basis, in a fact-specific context. The manifest necessity test “command[s] courts in considering whether a trial should be terminated without judgment to take ‘all circumstances into account’ and thereby forbid[s] the mechanical application of an abstract formula.” Wade, 336 U.S. at 691, 69 S.Ct. 834. The standard cannot
be applied ... without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word “necessity” cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a “high degree” before concluding that a mistrial is appropriate.
Washington, 434 U.S. at 506, 98 S.Ct. 824; see also Somerville, 410 U.S. at 462, 93 S.Ct. 1066 (the test “abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial”); Jorn, 400 U.S. at 480, 91 S.Ct. 547 (eschewing “mechanical rules”). As we said in Bates, “[cjourts steadfastly continue to refuse to categorize fact patterns that constitute manifest necessity and fact patterns that do not.” 917 F.2d at 394. The absence of a per se rule on jury polling is not relevant to the case-specific application of the manifest necessity doctrine.
*914 The government worries that granting relief in this case will create a rule of juror coercion. The law of juror coercion has been settled for a long time. The doctrine of manifest necessity is of even longer lineage. The two have lived comfortably together for centuries of American jurisprudence. Trial judges walk difficult lines between competing rights every day. Holding that, under these particular circumstances, a trial judge discharged a jury without manifest necessity would not alter the settled law of juror coercion at all.
The government contends that the trial judge was not permitted under Nevada law to poll the jury. However, none of the statutory provisions cited would have posed a barrier to granting Harrison’s request. The first statute, Nev.Rev.Stat. § 50.065, prohibits inquiry as to the juror’s mental processes. There was nothing in Harrison’s request that remotely posed that danger. The second statute, Nev. Rev.Stat. § 175.581, requires the jury to be polled at the request of a party after the jury returns a verdict. It does not address the circumstance at bar. The third statute, Nev.Rev.Stat. § 175.556(1), provides that when a jury is at an impasse in a capital case, the judge has the option of imposing a life sentence without the possibility of parole or impaneling a new jury. There is nothing in that provision that prohibits a judge from taking measures to ascertain whether the jury had made a decision regarding the death penalty. There is nothing in Nevada law that would have prohibited the judge from granting Harrison’s request for a poll, or asking whether the jury was at an impasse as to the imposition of the death penalty.
None of these diversions address the key issue in this case, whether there was a manifest necessity for the trial judge to discharge the jury sua sponte. The trial court’s actions satisfied none of the standards that we have held important in finding manifest necessity. When it was likely that the defendant would be acquitted of the death penalty, the trial judge sua sponte declared a mistrial — without proper consultation or deliberation, and without conducting the jury poll Harrison requested or even asking the jurors whether they were deadlocked regarding the death penalty. The trial court’s decision to discharge the jury deprived Harrison of his right to be tried by the jury impaneled to sit in judgment on him. The violation of that right precludes the government from seeking for a second time to impose a penalty of death.
For these reasons, I disagree with my friends in the majority and must respectfully dissent.

. See United States v. Lara-Ramirez, 519 F.3d 76, 88 (1st Cir.2008) (" 'Where there is a viable alternative to a mistrial and the district court fails adequately to explore it, a finding of manifest necessity cannot stand.’ ") (quoting United States v. Toribio-Lugo, 376 F.3d 33, 39 (1st Cir.2004)); United States v. Razmilovic, 507 F.3d 130, 138-39 (2d Cir.2007) (citing Dunkerley v. Hogan, 579 F.2d 141, 147 (2d Cir.1978), cert. denied, 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979)); United States v. Shafer, 987 F.2d 1054, 1057 (4th Cir.1993) (“In order to determine if the mistrial was required by manifest necessity, the critical inquiry is whether less drastic alternatives were available.”); United States v. Fisher, 624 F.3d 713, 722 (5th Cir.2010) ("manifest necessity” only justifies the sua sponte declaring of a mistrial where "the government ... show[s] that the district court carefully considered whether reasonable alternatives existed and that the court found none”); Johnson v. Karnes, 198 F.3d 589, 596 (6th Cir. 1999) (in concluding that the Double Jeopardy Clause barred reprosecution, finding it “significant that the trial court judge failed to consider less drastic alternatives, but instead immediately decided that a mistrial was appropriate”); Lovinger v. Circuit Court of the 19th Judicial Circuit, Lake County, Ill., 845 F.2d 739, 746 (7th Cir.1988) ("Whether or not options short of mistrial were feasible and preferable ..., the court did not consider them and thus did not afford proper solicitude for [the defendant’s] valued right to continue with the trial.”); Moussa Gouleed v. Wengler, 589 F.3d 976, 981 (8th Cir.2009) ("In determining whether a mistrial is justified by manifest necessity, we are particularly concerned with whether less drastic alternatives were available.” (citations and internal quotations omitted)); Walck v. Edmondson, 472 F.3d 1227, 1240 (10th Cir.2007) ("Because the trial judge did not consider ... viable alternatives, manifest necessity did not *910 require a mistrial.”); United States v. Quiala, 19 F.3d 569, 572 (11th Cir.1994) ("The lack of consideration of alternatives to a mistrial subjects the district court's abrupt declaration of a mistrial to close appellate scrutiny.”).

. In addition to the record evidence indicating a high probability of an eventual life sentence verdict, a recent study concluded that in eighty-nine percent of juries in the studied capital cases, the eventual penalty verdict was the outcome favored by the majority of jurors on the first vote. Scott E. Sundby, War and Peace in the Jury Room: How Capital Juries reach Unanimity, 62 Hastings LJ. 103, 107 (2010).

. The Double Jeopardy Clause "should be understood to safeguard not simply the individual defendant's interest in avoiding vexation, but also the integrity of the initial petit jury’s judgment.” Akhil Reed Amar, The Bill of Rights as a Constitution, 100 Yale L.J. 1131, 1190 (1991). Indeed, there runs through "the Anglo-American system of criminal justice ... a strong tradition that once banded together a jury should not be discharged until it ha[s] completed its solemn task of announcing a verdict.” Crist, 437 U.S. at 36, 98 S.Ct. 2156 (1978).

. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

. See Wilkins v. State, 96 Nev. 367, 373-74 n. 2, 609 P.2d 309 (1980).